Samuels, J.
The appeal in this case is taken from an order of the Circuit court of Kanawha county, dissolving an injunction on motion of the defendants below, the appellees here. In ascertaining the facts of the case, on such motion, the allegations of the bill are to be taken as true, unless denied by the answers or disproved by evidence in the record: Any affirmative allegations in the answers, if not sustained by proof, will be disregarded by the court. Looking to the facts to be ascertained by the rules above stated, the record shows this case:
David Ruffner by deed, on the 19th of October 1825 conveyed to his son in law Richard E. Putney, a parcel of land lying in Kanawha county, on which are situated a salt well, salt furnace and other necessary structures and fixtures for the manufacture of *543 salt. On the 14th of May 1835, said Ruffner executed an olograph will, in which he subjected portions of his real estate to the payment of his debts; he made specific provision in real and personal estate for his wife Ann; he devised portions of his real estate severally to his sons Lewis Ruffner and Henry Ruffner, and his sons in law Richard E. Putney and Moses M. Fuqua. He also gave to his wife any residuum of money which might be due to him, and of the proceeds of certain real estate devised to be sold, after payment of debts. There is no general residuary disposition of testator’s estate; nor does it appear what estate, if any, was left to pass under the statutes of descent and distribution, to the heirs at law and next of kin.
On the 20th of May 1840, Putney executed a deed of trust on the real estate conveyed to him by Ruffner on the 19th of October 1825, as above stated, to secure a debt of ten thousand two hundred and eight dollars and eighty-six cents, with interest from the 20th of May 1840, due to Dickinson and Shrewsbury.
On the 25th of August 1841, Putney executed another deed of trust on certain slaves hereafter to be mentioned, to indemnify William Tompkins and Andrew Donally as his securities in a debt of two thousand five hundred dollars.
After executing the two deeds of trust above mentioned, Putney, on the 12th of March 1842, executed a deed conveying to David Ruffner his equity of redemption in the land and slaves included in those deeds, also the absolute title to a quantity of other personal property. The deed from Putney to Ruffner recites that Putney owed certain debts therein specified, for some of which Ruffner was bound as security; among the debts specified was one to Henry Ruffner, the son of David Ruffner; and another to Lewis Ruffner, another son; and several to Lewis Ruffner, and *544 various other and different persons, his partners in different firms; that suits had been brought on some of the debts. The aggregate principal of the debts re(¿£e¿ ag being due is between nine and ten thousand dollars: the principal of the debts due to Henry Ruffner, to Lewis Ruffner, and to Lewis Ruffner and others, amounted to near five thousand dollars. David Ruffner signed and sealed the deed from Putney to himself, and thereby covenanted, in consideration of Putney’s conveyance to him and of one dollar, to pay the debts therein specified; thus in effect to indemnify Putney against them.
Yery soon after the 12th March 1842, that is, on the 16th day of the same month, mutual covenants between David Ruffner of the one part, and his sons Henry Ruffner and Lewis Ruffner of the other part, were entered into, reciting the fact of the conveyance by Putney to David Ruffner, and of David Ruffner’s covenant in consideration of that conveyance; and that said David Ruffner wished to free himself from the personal cares and responsibilities incurred by the terms of the said deed of conveyance; and it was agreed between the parties, that David Ruffner should forthwith deliver the lot of land conveyed, together with the salt furnace and all the appurtenances, into the possession, use, management and control of the said Lewis and Henry Ruffner, to the exclusion of all other persons, to be by them used and enjoyed at their discretion, for the purpose of paying, out of the net proceeds thereof, the debts and liabilities which said David assumed to pay in consideration of the deed of conveyance from said Putney as aforesaid, until said debts and liabilities should be fully paid and discharged out of the said proceeds, or until the land thus committed to their charge should be legally sold under deed of trust, or sold otherwise, so as to discharge all the said debts and liabilities from *545 the proceeds of the sale. And reciting that whereas the said Putney, with his wife, daughter of said David, would in case of said David’s decease as heir at law or by testament, entited to a share in the estate, real and personal, of the said David, unless otherwise provided for by said David himself; and thus injustice be done to said Henry and said Lewis, by leaving them responsible for debts and liabilities contracted by said Putney on his own account; therefore, said David did thereby agree and bind himself not to make over, lease or convey in any manner to said Putney, or transfer to any person for his the said Putney’s benefit, or that of his heirs or assigns, any part whatever of the lands, salt furnace and appurtenances aforesaid, nor any portion of said David’s lands or other estate, real or personal, nor any way encumber or pledge the same for the benefit of said Putney, or for the payment of his debts, other than those which said David had already assumed to pay, or was otherwise liable to pay at the then joresent time, until all the said debts and liabilities should be fully paid and discharged; providing, however, that the terms of the agreement should not preclude the said David from conveying to the said Putney for a valuable consideration a building lot above George’s creek, to be improved at his own expense. And the said David agreed that Lewis and Henry Kuffner should have the free use of coal on his land for the supply of the furnace, committed as above mentioned to their management for the payment of the debts aforesaid. And it was agreed and understood by the parties to the agreement, that no bequest or devise which said David might have made or might thereafter make in his last will and testament to said Putney and his wife, or to their heirs and assigns, should in any wise take effect or accrue to the benefit of said Putney, his wife, or their heirs or assigns; nor should any right or title *546 which they should acquire as heirs at law, be valid or take effect for their benefit until said debts and liabilities should be fully discharged and paid off. The said Lewis and Henry agreed and covenanted on their part, to use due care and diligence in the management of the said furnace and its appurtenances, and to apply the net proceeds thereof to the payment and liquidation of the debts and liabilities aforesaid ; and to render annually to said David as accurate an account as the nature of the case would admit, of both the gross proceeds of the said furnace, and the net proceeds remaining after all necessary charges should be deducted, and also an account of the application of such proceeds to the payment of the debts aforesaid; and should the property thus committed to their charge have at any time been freed from incumbrance by the discharge of the said debts and liabilities, then the said Henry and Lewis were to deliver up the possession and management of the same to the said David, or his legal representatives.
In pursuance of the agreement with David Ruffner, the other parties, Lewis Ruffner and Henry Rufiner, took possession of the property, and actively prosecuted the business of manufacturing salt. They expended not less than three thousand dollars in repairing the property, but the necessity or utility of such expenditure is denied by Putney. Lewis Ruffner, out of his own resources, paid to Dickinson and Shrews-bury nine thousand three hundred and thirty-one dollars, on account of their deed of trust on the property; he also paid the debt of two thousand five hundred dollars, in which Tompkins and Donally were securities, and charged by deed of trust on the slaves; the debt being about the value of the slaves. These payments were made to prevent sales under the deeds of trust. There are other debts in which David Ruffner was security for Putney, some of which have been paid out of Ruffner’s estate, and others of them remain *547 unpaid. The bill alleges that the property embraced by the deed from Putney to Ruffner, affords but a hazardous and uncertain security for the debts charged thereon, and that the complainants would not have entered into the agreement without the additional security afforded by the agreement of March 16th, 1842.
The answer of Putney does not deny expressly that the property conveyed by him to Ruffner is insufficient as a security; he asserts, however, that he could have sold it to others at the time he sold to Ruffner, for money enough to have paid the debts then charged thereon and those assumed by Ruffner.
David Ruffner died, leaving the will herein before mentioned; which was admitted to probat in the County court of Kanawha county at the March term 1843. On the 1st of November 1844, Putney executed a deed of trust on the real estate devised to him by Ruffner, to secure a debt of two thousand six hundred dollars due to Andrew Donally; and he also sold a portion of the estate to William D. Shrewsbury. These persons are made parties, and are charged with having acquired their interests with notice of the equitable rights conferred by the agreement of March 16, 1842; which charge they do not repel. The bill prayed an injunction, which was awarded, to restrain Putney from selling or conveying away the property devised to him as aforesaid; and that the interests acquired by Donally and William D. Shrewsbury respectively, may be postponed to the equitable charges imposed by David Ruffner on the property; and for general relief. Putney and Shrewsbury answered and moved to dissolve the injunction; on which motion the material facts appear as herein set forth. The motion was sustained; an order entered dissolving the injunction; from which order this appeal is taken.
The whole case turns on the question whether the *548 property formerly belonging to David Ruffner, to which Putney, or Putney and wife in her right, succeed under the will, or by descent or distribution, is charged either primarily or secondarily with the liabilities assumed by Ruffner for Putney, or with other of Putney’s debts for which David Ruffner was bound as security. If the property be so charged, whether immediately or contingently, the complainants have the right to prevent the alienation thereof, unless it be subject to the charge, as the property might thereby pass into the hands of purchasers for value without notice, and thus the charge be rendered of no avail.
The purposes of David Ruffner, disclosed in his will, and of David Ruffner, Lewis Ruffner and Henry Ruffner, disclosed in the agreement of March 16th, 1842, and their cotemporaneous exposition thereof, are perfectly manifest. Putney had become deeply embarrassed by his debts. Ruffner, his fathér in law, was willing to relieve him from a portion of those debts; that portion seems to have been selected with refer-ence to the benefit of Ruffner’s two sons, and for his own relief as security; the debts are all, or nearly all, such as the father or one of the sons was concerned in either as security or creditor. David Ruffner intended to subject the property acquired by the deed of March 12th, 1842, to the burden of paying his liabilities assumed by the agreement of that date; and further to charge those liabilities, and any other of Putney’s debts for which he was bound as security, or that portion of his estate which he had intended to give to Putney, or Putney and wife. This, in effect, was merely to vary the form of the benefit intended for Putney,* he will get all that was intended for him either by payment of his debts or in the property itself, or so much thereof as remains after discharging the liabilities imposed thereon.
Thus, whilst Putney receives all that was intended for him, the other objects of David Ruffner’s care and *549 bounty, Ms wife and Ms other children, are secured to some extent, if not entirely, against having to give up a portion of the estate intended for them, to pay Putney’s debts. The inherent justice of this arrangement commends it strongly to the favorable consideration of a court of equity; and there is no reason found in it for the earnest and impassioned invective by the appellees’ counsel against the attempt to disinherit Putney and wife. The counsel seemed to have overlooked the obvious fact, that by permitting Putney to enjoy the whole subject devised to him or his wife without specific charge thereon, all David Ruffner’s liabilities to or for Putney must be discharged out of the estate generally; and thus Putney’s debts, in whole or in part, in effect, be paid by the other parties interested, especially by Ann Ruffner, the wife of the testator. I am clearly of opinion that the defense of the appellees, so far as it rests upon the supposed hardship of the arrangement, is without a shadow of foundation.
It only remains to enquire whether there is any other defect in the contract, which will prevent the court from giving it the effect intended. The principal if not the only objection in this aspect of the case, is the want of valuable consideration moving from Lewis Ruffner and Henry Ruffner. In reply it may be said that David Ruffner was under the obligation of Ms covenant to Putney to pay to the appellants a sum of money, with interest and costs, of about five thousand dollars. It was therefore perfectly competent for David Ruffner to make any arrangement with these creditors of Putney for the discharge of the debts; and it cannot be said that David Ruffner’s contract was merely voluntary. The appellants, instead of exacting payment directly of Putney, or indirectly of Ruffner through Putney, agreed to await the slow process of procuring payment by means of equitable charges on portions of Ruffner’s estate. Thus David Ruffner had a double consideration from the appel *550 lants; one a large sum of money; the other the forbearance to collect it. Nor is this all. In consideration of the charges imposed by David Ruffner on portions of his property, the appellants bound themselves for an indefinite time, to give their labor and care to the personal and pecuniary relief of David Ruffner, in the management of the property committed to their hands. And this is a work of great magnitude. Whether the appellants could make any charge for their personal labor, care and diligence, is a question not free from doubt. See 1 Lomax Dig. 332; Bonithon v. Horhmore, 1 Vern. R. 316; French v. Baron, 2 Atk. R. 120; Godfrey v. Watson, 3 Atk. R. 517; Langstaffe v. Fenwick, 10 Ves. R. 405; 1 Powell on Mort. 295 b, Rand & Coventry’s edition.
It is probable, that whilst the English rule of withholding any compensation for personal service under all circumstances, might not be adopted in all its rigor, yet in our courts it would be departed from only in cases in which circumstances might make it equitable to do so. The money expended by a mortgagee in possession for needful repairs of the mortgaged property, is chargeable thereon. 1 Lomax Dig. 333.
In the case before us the money was in fact expended; the utility of the expenditure is a subject for further enquiry. The money, nearly twelve thousand dollars of principal in amount, paid by Lewis Ruffner to relieve the property from the paramount liens thereon, clearly went to the relief of David Ruffner, and should be charged on the mortgaged subject.
Thus, we have before us a case in which a purpose is distinctly manifested, by the owner of property, to charge certain liabilities for which he is bound, upon specific portions of his estate, real and personal; this purpose is declared by covenant under seal, for a consideration of great pecuniary value.
The form of the deed and the nature of a portion of the property, are such that a charge is not imposed of *551 which the common law courts would take cognizance. The more comprehensive and beneficent jurisdiction of courts of equity, however, embraces the case, and may give full relief. Those courts have long recognized a species of security known as an equitable mortgage, and will give it the effect of a legal mortgage. Wherever it appears by writing, signed by a debtor, that he intends to charge his debt upon certain property of his own, courts of equity, at the instance of the creditor, will effectuate the intention. Nor is it material in what form of instrument the intention is expressed: mere promises, powers of attorney, deeds imperfectly executed, and other written papers, have been held to create equitable mortgages in the contemplation of courts of equity. Those courts, on the general principles of their jurisdiction, have always specifically executed such contracts. The law courts giving either no relief, or inadequate relief, for this reason the courts of equity have taken jurisdiction and given to the intentions of parties their full effect. See Miller on Equitable Mortgages, p. 1, 2, 3, 4, 5, 47 Law Libr.; 3 Powell on Mortgages, (Coventry & Rand’s edition,) p. 1049 a, 6; 1050, &c.
Looking to the written evidence in the record, there is no doubt in my mind that David Ruffner intended to charge the debts mentioned in the deed of March 12, 1842, and other debts for which he was bound as security for Putney, upon the property conveyed by that deed, and also upon that portion of his estate to which Putney or Putney and wife might succeed under his will, by descent or distribution. That the property conveyed by the deed should be held as a primary security for the debts mentioned in the agreement of March 16, 1842, and the other property as a secondary security. Thus I am of opinion to reverse the order of the Circuit court dissolving the injunction and to reinstate that injunction.
In order to a full and final adjustment of the charges *552 on the property, it will be necessary to amend the bill making the personal representative of David Ruffher’s estate, Ann Ruffner, the wife of Richard E. Putney, Moses M. Euqua and wife, and the creditors whose debts are charged on the property, or any part of it, parties defendants.
Daniel and Moncure, Js. concurred in the opinion of Samuels, J.